# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> DONALD FLOYD BROWN and ) <br> CHARON GARRAY FIELDS, ) <br> ) <br> Defendants. ) | Case No. CR407-308 |

## REPORT AND RECOMMENDATION

Charon Garray Fields, who is charged with conspiracy, attempted credit union robbery, and possession of an unregistered short-barreled shotgun, has filed a motion to suppress evidence seized during a warrant-based search of his residence. (Doc. 35.) The Court held a hearing on this matter, at which the government offered testimony from Detective Josh Hunt of the Savannah-Chatham Metropolitan Police Department ("SCMPD"). Defendant Fields did not testify. For the following reasons, his motion to suppress should be **DENIED**.

# I. FACTUAL BACKGROUND

A confidential informant reported to the Federal Bureau of Investigation ("FBI") that Donald Brown and at least one other person were planning an armed robbery of the Georgia Heritage Federal Credit Union. The FBI and SCMPD rapidly developed a plan to respond to the scheme. On September 26, 2007, the informant notified the FBI that the robbery was going forward. The informant met with Brown and Fields at Fields' residence, located at 1216 East 31st Street, Savannah, Georgia. Apparently due to a last minute change in plans, Brown and Fields rode with the informant to the Memorial Health Credit Union at 1203 East 66th Street in Savannah, rather than to the Georgia Heritage Credit Union, as originally planned. Upon arrival at the credit union, the defendants were arrested by FBI agents and SCMPD officers. A search of their vehicle revealed two shotguns and six shotgun shells. Both Brown and Fields carried mesh hunting baklavas in their pockets. Fields also had a loaded .380 caliber pistol in his waistband.

Following the arrest, Detective Hunt of the SCMPD presented an affidavit in support of a state search warrant for Fields' residence. A

Recorder's Court judge issued the warrant, which authorized the officers to search for:

> ANY AND ALL EVIDENCE RELATED TO THE CRIME OF ARMED ROBBERY; ANY FIREARMS, FIREARM AMMUNITION, FIREARM PARTS, FIREARM PARAPHERNALIA; ANY ARTICLES AND/OR PICTURES DEPICTING OR SHOWING FIREARMS; ANY CLOTHING OR ARTICLES USE [sic] TO CONCEAL ONE'S IDENTITY; ANY PICTURES AND OR WRITINGS DEPICTING FIANCIAL [sic] INSTITUTIONS, OR OTHER COMMON TARGETS OF THE CRIME OF ROBBERY; ANY FRUITS OF THE CRIME OF ARMED ROBBERY ANY WRITINGS AND/OR PICTUES [sic] THAT DEPICT THE OFFENSES AS DESCRIBED ABOVE, OR ANY OTHER CRIMINAL OFFENSE.

(Gov't Ex. 1.) Hunt and other officers with the SCMPD executed the warrant at 9:30 p.m. on September 27, 2008. After the officers identified themselves at the door, Fields' family permitted entry and directed the officers to Fields' room. The following items were seized: (1) six small bags of suspected powder cocaine, (2) shotgun shells, (3) an "emachine" computer, (4) miscellaneous gang-related writings, (5) a Georgia identification card, (6) a .410 shotgun shell, (7) 9mm ammunition, (8) two pill bottles, and (9) miscellaneous documents and photos. (Gov't Ex. 2.)

## II. ANALYSIS

Fields contends that the seizure of certain items exceeded the scope of the search warrant, requiring their suppression. (Doc. 35 at 3-4.) He further contends that the search warrant in question was a "general" warrant that failed to identify the items to be seized with sufficient particularity. (Id.)

### A. Scope of the Search

Fields argues that the seizure of his computer, gang-related writings, Georgia identification card, pill bottles, and miscellaneous documents and photos exceeded the scope of the search warrant. After analyzing each disputed item, the Court is of the opinion that all of the items fell within the warrant's scope or were reasonably seized under the circumstances.

Looking first at the seizure of Fields' computer, he argues that the seizure and the subsequent search by an FBI computer forensics expert exceeded the scope of the warrant. (Id.) The search warrant called for the seizure of "any and all evidence related to the crime of armed robbery" and "any pictures and/or writings depicting financial institutions or other common targets of the crime of robbery." (Gov't Ex. 1.) Detective Hunt

reasonably believed that certain of these items may have been present on Fields' computer. When he arrived at Fields' residence, the computer was on. He moved the mouse to disable the screensaver, revealing an open web-browser window addressed to the Google.com search engine. Hunt then clicked into the web-browser's history bar to look for recent searches. The history revealed a prior Mapquest search for the Georgia Heritage Credit Union, along with several other banks. Because Hunt is not a computer expert, he suspended his search in order to avoid the accidental deletion of evidence. He seized the computer tower itself, leaving the monitor, keyboard, mouse, and other accessories at Fields' residence. The computer was later searched by a forensic computer expert.

The warrant did not explicitly permit the seizure of the computer, but it is very well established that a warrant need not specifically anticipate the type of container that may conceal the object of a search. United States v. Ross, 456 U.S. 798, 820-21 (1982) ("[A] warrant that authorizes an officer to search a home for illegal weapons also provides the authority to open closets, chests, drawers, and containers in which the weapon may be found. . . . ."); United States v. Gomez-Soto, 723 F.2d 649, 655 (9th Cir. 1984)

("[T]he failure of the warrant to anticipate the precise container in which the material sought might be found is not fatal."). Furthermore, "the seizure of computers, and subsequent analysis away from the search premises," has uniformly been held to be proper when the executing agents were authorized to search for records likely to be stored on a computer. United States v. Hernandez, 2007 WL 2915856, at *17 (S.D. Fla. Oct. 4, 2007); United States v. Sissler, 1991 WL 239000, at *4 (W.D. Mich. Aug. 30, 1991). Consequently, the failure to specifically authorize the seizure of Fields' computer in the search warrant does not require exclusion.[1]

The Georgia identification card, pill bottles, and photographs were also properly seized under the warrant because they provide inferential proof tying the bedroom, and the evidence found within that room, to Fields. The identification card, pill bottles, and photographs associate Fields' name and image with the room searched. Though these items may

---

[1] Defendant relies upon United States v. Evaschuck, 65 F. Supp. 1360 (M.D. Fla. 1999), to support his scope argument. In that case the warrant specifically permitted the search of logbooks for a certain range of years, but the officers executing the warrant seized records far outside of the warrant's listed dates. Id. at 1366-68. Here, however, the search of the computer was directly related to the warrant's directive to seize any evidence "related to" the crime of armed robbery or any pictures or writings depicting financial institutions or other common targets of the crime of robbery. Evaschuck is so factually distinguishable from this case that it does not bear further consideration.

be subject to exclusion under some provision of the Federal Rules of Evidence, Fourth Amendment suppression is simply not warranted.[2]

The gang-related writings and other miscellaneous documents and photographs seized were also within the scope of the warrant. The warrant specifically permitted the seizure of "any and all evidence related to the crime of armed robbery." (Gov't Ex. 1.) Most of these writings evidence Fields' knowing possession and use of firearms in the course of a criminal lifestyle, inferentially connecting Fields to the crimes charged. (Gov't Ex. 3.) For instance, one of the documents seized is a prayer asking for mercy

---

[2] The pill bottles were also seizable under the "plain view" doctrine, as the bottles were filled with small jewelry bags consistent with the sale of cocaine or other drugs, and the officers found a quantity of suspected cocaine in the room. The "plain view" doctrine permits officers executing a search to seize items not particularly described in the warrant in certain limited circumstances. "Under that doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. . . . If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object – i.e., if 'its incriminating character [is not] 'immediately apparent,'" . . . – the plain-view doctrine cannot justify its seizure." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (citations omitted). Thus, officers who are searching for an item named in a warrant are not required to avert their eyes when, in the natural course of searching for the named item, they come across some other incriminating object. Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971). Indeed, it is simply not a "search" for Fourth Amendment purposes for an officer to merely look at an object from a vantage point at which his presence is constitutionally permissible. Arizona v. Hicks, 480 U.S. 321, 328 (1987); United States v. Rodgers, 924 F.2d 219, 221 (11th Cir. 1991); United States v. Williams, 822 F.2d 1174, 1182 n.82 (D.C. Cir. 1987).

and guidance from the Almighty because of the author's life of gun violence. (Id.) In another document, the author states "when I die $show no pitty bury me deeply in gangsta c^ity, pkut a kitc^h fork$ ac^ro$$ my c^he$t and tell King Hoover I tried my be$t. Pkut $hotgun$ in my hand$ and tell King Hoover I tried my be$t." (Id.) As noted above, the police found a shotgun in the vehicle Fields occupied on the way to the alleged robbery attempt.

In addition, the warrant permitted the seizure of any "firearm paraphernalia; [and] any articles, and/or pictures depicting or showing firearms." (Gov't Ex. 1.) It was not unreasonable for an officer executing the warrant to conclude that these writings "depict" or relate to the unlawful use of firearms and therefore fell within the scope of the warrant. See Maryland v. Garrison, 480 U.S. 79, 87-89 (1987) (holding that where police officers executing a warrant make an objectively reasonable mistake about its scope, the evidence obtained is still admissible); see also Illinois v. Rodriguez, 497 U.S. 177, 185 (1990) ("[I]n order to satisfy the 'reasonableness' of the Fourth Amendment, what is generally demanded of the many determinations that must regularly be made by agents of the

government . . . is not that they always be correct, but that they always be reasonable."); Brinegar v. United States, 338 U.S. 160, 176 (1949) ("Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.").

The remaining documents detail gang codes, traditions, and activities, without explicitly referencing gun violence. But their seizure was still appropriate because deciphering the exact meaning of gang codes and symbols "requires a degree of expertise beyond that of the executing officers." See 2 Wayne R. LaFave, Search and Seizure § 4.11(a) (3rd ed. 1996). In such cases, the courts have uniformly permitted "a bit of an 'overseizure'" rather than requiring the officers to sort out and sever the questionable documents at the search site. Id.

**B. Particularity**

The last phrase of the search warrant's items-to-be-seized clause permitted the seizure of "any fruits of the crime of armed robbery any

writings and/or pictu[r]es that depict the offenses as described above, *or any other criminal offense.*" (Doc. 39 at 2 (emphasis added).) Fields contends that this language converts the entire warrant into an unconstitutional "general" warrant.[3] (Doc. 35.)

General warrants are insufficiently particular under the Fourth Amendment because they fail to adequately describe the place to be searched and the persons or things to be seized. See Dalia v. United States, 441 U.S. 238, 255 (1979). This particularity requirement protects persons against indiscriminate rummaging through their property by government agents. Coolidge v. New Hampshire, 403 U.S. 465, 467 (1971). A description in a warrant is sufficiently particular "when it enables the searcher reasonably to ascertain and identify the things to be seized." United States v. Santarelli, 778 F.2d 609, 614 (11th Cir. 1985); United States v. Betancourt, 734 F.2d 750, 754-55 (11th Cir. 1984) ("The standard is one of practical accuracy rather than technical nicety."). While the objected-to language is undoubtedly unfortunately phrased, it did not provide carte blanche for the executing officers to rummage aimlessly

---

[3] Fields does not contest the remaining portions of the warrant.

through Fields' belongings. Other language in the warrant allowed the officers to conduct a thorough search of Fields' residence for "evidence related to the crime of armed robbery," including firearms and ammunition, writings and photographs, disguises, and fruits of the crime. (Gov't Ex. 1.) As these items could be easily concealed, the police officers were permitted to go "through the residence with a fine tooth comb." United States v. Buckley, 4 F.3d 552, 557 (7th Cir. 1993). A search for these items would have entailed an exploration of every nook and cranny of defendant's bedroom and at least a cursory examination of every document and scrap of paper found therein. See 2 Wayne R. LaFave, Search and Seizure § 4.10(d) (3rd ed. 1996). In properly examining the documents to determine if they "related to" or "depict[ed]" the crime of armed robbery or the common targets of such a crime, the officers may very well have stumbled across documents or images that pertained to some "other criminal offense," justifying the seizure of that evidence under the plain view doctrine. So, in one sense, the search warrant simply authorized the officers to seize what was otherwise seizable even without the objected-to language. Further, this language did not sanction any broader search than

11

was already permissible under the other, unobjected-to language of the warrant. Thus, the language defendant points to did not convert the warrant into a general warrant that allowed some further invasion of privacy beyond that authorized by other language in the warrant.

Even if the offending language fails the Fourth Amendment's particularity requirement, it only modifies the last phrase of the warrant's items-to-be-seized clause, which permitted the search and seizure of "any writings and/or pictu[r]es" depicting armed robbery or any other criminal offense. It does not modify the warrant in its entirety, and it is well established that where a warrant as a whole is sufficiently particularized, an invalid portion may be severed, resulting in the suppression of only those items seized under the offending section. See Id. at § 4.6(f); United States v. Cook, 657 F.2d 730, 734-36 (5th Cir. 1981) (agreeing with the majority view of severance, as established in Aday v. Superior Court of Alameda County, 55 Cal. 2d 789, 797 (1961));[4] United States v. Greene, 250 F.3d 471, 476-77 (6th Cir. 2001); United States v. Moetamedi, 46 F.3d 225, 230 (2d

---

[4] The decision in Cook was entered on July 8, 1981. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. Consequently, Cook is binding Eleventh Circuit precedent.

Cir. 1995). Here, even after severing the offending portion of the warrant, none of the items seized should be suppressed. As discussed in the "scope" section above, none of the items were seized pursuant to the language Fields finds objectionable.

Finally, even if the entire warrant somehow became a "general" warrant due to the operation of its final clause, the search and seizure is protected under the "good faith" exception to the exclusionary rule. In <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984), the Supreme Court held that the exclusionary rule should not apply where law enforcement officers executing a warrant act on the objectively reasonable belief that their conduct conforms with the Fourth Amendment. The good faith exception "focus[es] exclusively on whether there was an objective[ly] reasonable basis for the mistaken belief of the executing officers that the warrant was valid." <u>Massachusetts v. Sheppard</u>, 468 U.S. 981, 988 (1984) (holding that the <u>Leon</u> exception permitted evidence to be introduced at trial when the judge who issued the warrant failed to incorporate the supporting affidavit, which described the things to be seized). Here, the record establishes that Hunt acted in objective good faith reliance on the validity of the warrant.

Accordingly, the exclusionary rule does not require suppression of items seized under the warrant.[5]

---

[5] It also appears that Detective Hunt's affidavit was attached to the warrant. (Gov't Ex. 3.) An affidavit can be used to meet the particularity requirement when the affidavit and the warrant can reasonably be said to be one document. See 2 Wayne R. LaFave, Search and Seizure § 4.6(a) (3rd ed. 1996). Here, the warrant clearly cross-references the affidavit and the affidavit appears to be physically attached to the warrant. (Gov't Ex. 1.) But it is unclear if the warrant and affidavit were both present at the search site. United States v. Wuagneux, 683 F.2d 1343, 1351 n.6 (11th Cir. 1982) (holding that an affidavit can be used to meet the particularity requirement if it is available at the search site and the searching agents knew what they were looking for); United States v. Haydel, 649 F.2d 1152 (5th Cir. 1981), corrected, 664 F.2d 84 (5th Cir. 1981). If the warrant and affidavit were present at the search site, the affidavit supports a finding of adequate particularity. Detective Hunt states in the affidavit that, in his experience, "persons involved in the conspiracy to commit Armed Robbery ... frequently are involved in multiple offenses, ... [and] are commonly in possession of materials from multiple crimes." (Hunt Aff. at 2.) And those who commit the crime of bank robbery frequently plan the robbery using "photographs, writings, and other physical documentation." (Id.) When considered with the affidavit, the warrant describes in detail the transactions, parties, dates, and conduct that gave rise to the charged crimes. It is clear that the warrant sought writings and pictures involving related criminal offenses, consistent with the detective's crime spree and crime preparation rationales.

Additionally, the warrant specifically referenced the criminal charges against Fields, twice referencing the crime of armed robbery. (Doc. 39 at 2.) When a warrant specifically connects the items to be searched for and seized to the specific criminal conduct suspected, it weighs in favor of finding that the warrant is adequately particularized. See United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995) (finding that overly broad warrant which authorized seizure of virtually every document and computer file could have been made more particular by specifying suspected criminal conduct); United States v. Bianco, 998 F.2d 1112, 1116 (2nd Cir. 1993) (finding warrant overly broad in part because it did not make reference to any type of criminal activity).

## III. CONCLUSION

For the foregoing reasons, defendant's motion to suppress should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 22nd day of May, 2008.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR407-308 |
| | ) |
| DONALD FLOYD BROWN and | ) |
| CHARON GARRAY FIELDS, | ) |
| | ) |
| Defendants. | ) |

## ORDER

After a careful <u>de novo</u> review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this ____ day of _____, 2008.

> B. AVANT EDENFIELD
> UNITED STATES DISTRICT JUDGE
> SOUTHERN DISTRICT OF GEORGIA

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA, )
)
v. ) Case No. CR407-308
)
DONALD FLOYD BROWN and )
CHARON GARRAY FIELDS, )
)
    Defendants. )

## **O R D E R**

After a careful de novo review of the record in this case, the Court concurs with the Magistrate Judge's Report and Recommendation, to which no objections have been filed. Accordingly, the Report and Recommendation of the Magistrate Judge is adopted as the opinion of the Court.

**SO ORDERED** this \_\_\_\_ day of _____, 2008.

 

_____
B. AVANT EDENFIELD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA